WILLIAM BOHLKE, Plaintiff

and

CERTAIN LONDON UNDERWRITERS of London, England, Intervening Plaintiff

v.

AIRPORT TERMINAL SERVICES, INC. and AVIATION TERMINAL SERVICES, INC., Defendants-Third Party Plaintiffs

v.

DAVID LINTON DANN, Third Party Defendant

Civil No. 268-1973

District Court of the Virgin Islands

Div. of St. Croix

May 5, 1975

ISHERWOOD, COLIANNI, ALKON & BARNARD, ESQS. (THOMAS ALKON of counsel), Christiansted, St. Croix, V.I.

MERWIN, ALEXANDER & O'BRIEN, ESQS. (DAVID O'BRIEN of counsel), Christiansted, St. Croix, V.I.

NICHOLS & SILVERLIGHT, ESQS. (IRVING SILVERLIGHT of counsel), Christiansted, St. Croix, V.I.

YOUNG, *District Judge*

MEMORANDUM OPINION AND JUDGMENT

██ During the evening of July 10, 1971, a Curtis C-46 airplane leased to plaintiff William Bohlke, doing business as Caribbean Air Services (herein "C.A.S.") by Aircraft Modifications, Inc., was damaged at Alexander Hamilton Airport when it was struck on the wing by a self-propelled aircraft loading stairs being operated by Elroy Watts, an employee of defendant Airport Terminal Services, Inc., (herein "A.T.S."). Certain London Underwriters, who paid an insurance claim by Bohlke for repairs to his aircraft, intervened to enforce their right of subrogation. A.T.S. filed a counter-claim for wrongful attachment of its equipment by plaintiff pursuant to a judgment against another corporation, Interstate Air Services, Inc., (herein "Interstate"). A.T.S. also filed a third party action against its insurer, David Linton Dann, who denied coverage of this claim because of an alleged breach of a condition of the insurance contract. The driver, Elroy Watts, was not licensed by the Virgin Islands Government to drive motor vehicles on the public roads of the Virgin Islands. A regulation of the Virgin Islands Port Authority, Section 5.16, prohibits unlicensed drivers from driving on any area of the airport. A condition of the insurance agreement between A.T.S. and David Linton Dann was that the insured comply with all governmental regulations. The third party action was severed from the main action and submitted on stipulated facts. I ruled prior to the presentation of evidence at the court trial of the main action held on April 19, 1975, that David Linton Dann properly denied coverage of this claim for reasons stated more fully in the record. Chiefly, I ruled that allowing an unlicensed driver to operate the mobile aircraft stairs was a violation of the Port Authority Regulation 5.16 and that this was a material breach of a condition of the insurance agreement.

■ After the presentation of the evidence and the arguments of counsel, I ruled that A.T.S. was negligent and that Bohlke was not guilty of any contributory negligence which would bar his claim. I stated my findings of facts into the record at the trial. My findings as to the material facts are that the C-46 was parked in the cargo terminal area, partially on the concrete taxi way and partially on the asphalt ramp which abuts the cargo terminal buildings. This was in violation of an airport regulation of the Virgin Islands Port Authority which requires airplanes to park totally off the asphalt, but this violation did not contribute to the accident. There was approximately 47 feet between the C-46's wing-tip and the cargo terminal building which provided more than adequate passageway for ground service vehicles. To have located the C-46 totally on the concrete would have allowed only a few additional feet to the already ample room for safe transit around the ramp area. I found that the accident and subsequent damages were solely caused by the negligent operation of the mobile aircraft stairs by Elroy Watts and that he was acting within the scope and during the course of his employment with A.T.S.

■ I took the issue of damages under advisement. Intervenor, Certain London Underwriters provided proof that the cost to repair the C-46 was $9,600.00, and that they paid $9,350.00 on the claim. Their policy with Bohlke provided for the deduction of the first $250.00 of any loss from claims. Therefore, Certain London Underwriters will be awarded judgment for $9,350.00.

■ Bohlke presented evidence as to the consequential damages of the accident. The airplane was out of service from July 10, 1971 until August 16, 1971, a total of 36 days down time. A.T.S. argued that it should not be found responsible for the total down time since Bohlke could have acted more promptly in having the C-46 repaired. Instead of promptly and initially making a claim on his own full

damage insurance (which would have cost him the usual bonus for a "no-claim" year), Bohlke negotiated with Interstate and its liability insurance carrier for the repair of the airplane. Interstate represented to Bohlke that it would be responsible for that accident and would repair the airplane promptly. I find that Bohlke reasonably relied upon the responsibility of Interstate, and, therefore Bohlke should not be penalized for not having more promptly undertaken his own repairs. Several items of equipment used by A.T.S. at Alexander Hamilton had Interstate insignia on them, and Interstate never disavowed responsibility for the accident. True, as it later developed, Interstate was the wrong corporate entity, but I found that Bohlke reasonably thought it was the correct one.[1] Therefore, I cannot justly reduce the down time for any alleged unreasonable delay attributable to Bohlke.

██ Mr. Orpen, the vice-president of C.A.S., testified that, based on the records kept by the company as required by the Civil Aeronautics Board of the United States Government, C.A.S. carried 250,000 lbs. less cargo during the period that the C-46 was down than the comparable periods before and after the "down-time" and that the loss of use of the C-46 was the sole cause of this loss. He also testified that the average revenue from cargo was $0.075 per pound for a total loss of $18,750.00. There was no contrary evidence, and I find that Bohlke lost $18,750.00 in general cargo revenues during the period July 10–August 16, 1971.

Bohlke also presented evidence that C.A.S., in addition to the general cargo loss, would have received revenues from

---

[1] Though answers to the interrogatories to A.T.S. were not offered in evidence they do help to explain why Bohlke and Interstate negotiated with each other. There is a substantial over-lap in officers of A.T.S. and Interstate. J. A. Santana served as president of both from 1966–73, Luis de Jesus was vice-president of both for the same period and Eli Arroyo was secretary-treasurer of both for the same period. I do not rely on these facts in making my determination as to the reasonableness of Bohlke's delay. That determination is based on the evidence properly admitted at the trial.

several charter flights which it was unable to perform during the time the C-46 was unavailable. Orpen testified that C.A.S. was unable to perform a contract charter for Virgin Islands Water and Power Authority for which C.A.S. would have received $275.00. Further, C.A.S. lost an estimated 6 charters with the Hess Oil Virgin Islands Corporation for which C.A.S. would have received $575.00 each, and 10 charters from Quality Sales Company at a rate of $275.00 each. Neither the Hess Oil nor the Quality Sales charters were based on contracts; rather the expectancy was based on past dealings between the parties. C.A.S. flew 8 charter flights for Quality Sales in the month prior to the accident, and Orpen extrapolated from that figure the estimate that they would have flown 10 during the 36 day period in which the C-46 was unavailable. Hess Oil was moving a great deal of material from Houston, Texas to St. Croix during this period and C.A.S. expected to continue to receive charters from Hess Oil during this move as it had in the period prior to the accident. I find that the expectations of Bohlke that C.A.S. would have performed the estimated charters during the 36 day period to be reasonably based on the past history of the company, and I include the amounts claimed in the judgment.

The revenues that would have been earned during the 36 day period must be off-set by the expenses that would have been incurred had the C-46 been in operation. In answer to interrogatories, Bohlke stated that the operating expenses of the C-46 averaged $418.64 per day in the month prior to the accident and $402.66 per day in the month after it was back in service. At trial, Orpen testified that those figures included over-head expenses and that the operating expenses of the C-46 were from $300.00 to $325.00 per day. It seems improbable that fixed costs of an airplane are such a small percentage of the total costs, but I am limited by the evidence presented at trial. Therefore, I find that

Bohlke would have incurred expenses of $300.00 per day for 36 days if he had operated the C-46 and this amount, $10,800.00 will be deducted from the revenues lost.

A.T.S. counterclaimed for the wrongful attachment by Bohlke of a jet ground starter and a mobile baggage carrier belonging to A.T.S. on March 10, 1973, pursuant to a defective judgment obtained by Bohlke against Interstate in Civil No. 307-1971, St. Croix Division, District Court of the Virgin Islands. The attachment was terminated April 11, 1973. These facts are taken as established pursuant to Fed. R. Civ. P. 36 since Bohlke failed to deny a request to admit the above facts.

█ The wrongful attachment counterclaim is governed by §§ 674 and 675, Restatement of Torts. Section 674 provides:

One who initiates or procures the initiation of civil proceedings against another is liable to him for the harm done thereby, if
  (a)  the proceedings are initiated
    (i)  without probable cause,
    (ii)  primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based, and
  (b)  except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

Ancillary proceedings, such as attachments in aid of execution of a judgment, come within the general rule of this section. Id., comment (d). The one who seeks to recover for a wrongful attachment bears the burden of proof on all three elements of the claim. Id., comment (e).

The attachment was lifted April 11, 1972, by court order because judgment on which the levy was based was defective. Bohlke admits now that the items attached belonged to A.T.S. which was not a party to the prior suit. Therefore, A.T.S. has proved the successful termination of the attachment proceedings.

■ A.T.S. bears the burden of proving lack of probable cause for the attachment. The proper standard to be applied in this case is set out in § 675 of the Restatement of Torts:

"One who initiated civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which his claim is based, and

(a) reasonably believes that under such facts the claim may be valid at common law or under an existing statute, . . ."

Orpen testified that the two items of equipment that were attached under the execution on the judgment against Interstate had Interstate's name on them. Victor Delgado, an employee of A.T.S., testified that Interstate's name was on the ground starter but not on the baggage unloader. Orpen testified that other equipment in the same area as the two pieces attached had A.T.S.'s name on them, and that these items were not attached. I find as a fact that Interstate's name was on the items, it was reasonable for Bohlke to assume that they belonged to Interstate and were proper items for attachment under his judgment against Interstate. Therefore, Bohlke had probable cause to levy on the ground starter and baggage unloader belonging to A.T.S.

■ A further reason for denying A.T.S.'s counterclaim is its failure to allege and prove that the levy was in bad faith. Section 674(a)(ii), Restatement of Torts makes bad faith an element of the cause of action and the absence of such an allegation is fatal to the claim. There is no indication that Bohlke sought any purpose other than to recover an amount equal to his damages in levying the attachment on the A.T.S. equipment.

## JUDGMENT

For the reasons stated in the accompanying Memorandum Opinion and upon the findings of fact and conclusions of law which I have dictated into the record at the close of trial, it is hereby

ORDERED, DECREED AND ADJUDGED that

1. Plaintiff William Bohlke recover from defendant Airport Terminal Services, Inc., the sum of $14,675.00, his costs of this action and reasonable attorney's fees to be determined upon the submission of a bill of costs and a hearing thereon, if requested;

2. Plaintiff Certain London Underwriters recover from defendant Airport Terminal Services, Inc., the sum of $9,350.00, its costs of this action and reasonable attorney's fees to be determined upon the submission of a bill of costs and a hearing thereon, if requested;

3. Defendant Airport Terminal Services, Inc.'s counterclaim be dismissed;

4. Defendant Airport Terminal Services, Inc.'s third party claim be dismissed; and

5. Third party Defendant David Linton Dann recover reasonable attorney's fees to be determined upon the submission of a bill of costs and a hearing thereon, if requested.